THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

STEPHANI LEFLORE,
Individually, and as Relator for
UNITED STATES OF AMERICA,
STATE OF CALIFORNIA,
STATE OF DELAWARE,
DISTRICT OF COLUMBIA,
STATE OF FLORIDA
STATE OF GEORGIA,
STATE OF HAWAII,
STATE OF ILLINOIS,                                No.: 08-CV-574
STATE OF INDIANA,
STATE OF LOUISIANA,
COMMONWEALTH OF MASSACHUSETTS,
STATE OF MICHIGAN,
STATE OF MONTANA,
STATE OF NEW HAMPSHIRE,          **FILED IN CAMERA AND**
STATE OF NEW JERSEY,              **UNDER SEAL**
STATE OF NEW MEXICO              **PURSUANT TO THE**
STATE OF NEW YORK,               **FEDERAL FALSE**
STATE OF NEVADA,                 **CLAIMS ACT,**
STATE OF OKLAHOMA,               **31 USC 3730(b)(2)**
STATE OF RHODE ISLAND,
STATE OF TENNESSEE,              **JURY TRIAL DEMANDED**
STATE OF TEXAS,
COMMONWEALTH OF VIRGINIA,
and the STATE OF WISCONSIN,

        Plaintiffs,

vs.

CVS CAREMARK CORPORATION.,

        Defendant.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## AMENDED COMPLAINT

1.    Now comes the United States of America, and the states of California, Delaware,

District of Columbia, Florida, Georgia, Hawaii, Illinois, Indiana, Louisiana, Michigan, Montana,

New Hampshire, New Jersey, New Mexico, New York, Nevada, Oklahoma, Rhode Island,

Tennessee, Texas, the Commonwealth of Massachusetts, the Commonwealth of Virginia, and

Wisconsin (collectively referred to as the "Government"), and Stephani LeFlore, individually and

as Relator for the United States, the named States, and the District of Columbia, stating as

follows for their Complaint against CVS Caremark Co. ("CVS Caremark") for violation of the

federal False Claims Act, 31 U.S.C. §§3729-32, and the analogous state and district false claim

acts.

## INDEX

| | Page |
|---|---|
| Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| Jurisdiction and Venue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| Count One - Federal False Claims Act-Overbilling on Dual-Eligible | |
|              Medicaid Customers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 |
|     The Dual-Eligible Assignment System . . . . . . . . . . . . . . . . . . . . . . . . | 6 |
|     The Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 11 |
|     Relators' Discovery of the Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 |
| Count Two - California False Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . | 15 |
| Count Three - Delaware False Claims . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 |
| Count Four -- District of Columbia False Claims . . . . . . . . . . . . . . . . . . . | 18 |
| Count Five - Florida False Medicaid Claims . . . . . . . . . . . . . . . . . . . . . | 19 |
| Count Six - Georgia False Medicaid Claims . . . . . . . . . . . . . . . . . . . . | 20 |
| Count Seven – Hawaii False Claims Act . . . . . . . . . . . . . . . . . . . . . . . . . | 21 |
| Count Eight - Illinois Whistleblower False Claims . . . . . . . . . . . . . . . . . | 22 |
| Count Nine - Indiana False Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 23 |
| Count Ten - Louisiana Medical False Claims . . . . . . . . . . . . . . . . . . . . . | 24 |

Count Eleven- Massachusetts False Claims . . . . . . . . . . . . . . . . . . . .    25

Count Twelve- Michigan False Claims . . . . . . . . . . . . . . . . . . . . . .    26

Count Thirteen- Montana False Claims . . . . . . . . . . . . . . . . . . . . .    27

Count Fourteen- New Hampshire False Claims . . . . . . . . . . . . . . . . .    28

Count Fifteen- New Jersey False Claims . . . . . . . . . . . . . . . . . . . .    30

Count Sixteen- New Mexico False Claims . . . . . . . . . . . . . . . . . . .    31

Count Seventeen- New York False Claims . . . . . . . . . . . . . . . . . . . .    32

Count Eighteen- Nevada False Claims . . . . . . . . . . . . . . . . . . . . . . . .    33

Count Nineteen- Oklahoma Medicaid False Claims . . . . . . . . . . . . . .    34

Count Twenty- Rhode Island False Claims . . . . . . . . . . . . . . . . .    35

Count Twenty-One- Tennessee Medicaid False Claims . . . . . . . . . . . .    36

Count Twenty-Two - Texas Medicaid False Claims . . . . . . . . . . . . . . .    37

Count Twenty-Three - Virginia False Claims . . . . . . . . . . . . . . . . . . . .    38

Count Twenty-Four - Wisconsin False Claims . . . . . . . . . . . . . . . . . . . .    40

Prayer for Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    41

Jury Demand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    42

## INTRODUCTION

2.      This is an action by the Plaintiffs to recover treble damages and civil penalties arising from false statements and claims made or caused to be made by defendant CVS Caremark to the Government.

3.      This action is also brought by Plaintiffs against CVS Caremark under analogous state false claims acts, statutes or codes, for the states listed in Counts Two through Twenty-Four.

4.     CVS Caremark owns and operates a nationwide chain of retail pharmacies. Dual-eligible Medicaid patients are persons legitimately on Medicaid who also maintain private health insurance. CVS Caremark has defrauded the government by systematically overcharging Medicaid programs more for prescription medications on these dual-eligible customers. Medicaid should only be charged what the customer would have been required to pay as a co-pay if the customer was just using their private insurance for the drugs. CVS Caremark has been systematically and deceptively charging Medicaid more for years.

5.     CVS Caremark has violated the federal False Claims Act in the District of Columbia and all states (not just the plaintiff states) in which CVS Caremark Co. transacts pharmacy business. CVS Caremark has done business and committed this fraud in all states of the United States with the exception of Alaska, Arkansas, Idaho, South Dakota, Utah and Wyoming.

## JURISDICTION AND VENUE

6.     This is a civil action arising under the laws of the United States to redress violations of the False Claims Act, 31 U.S.C. §§3729-3730. This court has jurisdiction over the subject matter of this action: (i) pursuant to 31 U.S.C. §3732, which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§3729 and 3730; (ii) pursuant to 28 U.S.C. §1331, which confers federal subject matter jurisdiction; and, (iii) pursuant to 28 U.S.C. §1345, because the United States is a plaintiff.

7.     This court has supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. §1367.

8.     This suit is not based upon prior public disclosures of allegations or transactions in a criminal, civil, or administrative hearing, lawsuit or investigation or in a Government

Accounting Office or Auditor General's report, hearing, audit, or investigation, or from the news media.

9.      To the extent that there may have been a public disclosure unknown to Relator, the Relator is an original sources under 31 U.S.C. §3730(e) (4) and all relevant state statutes. She has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing this action.  10.

Relator has provided to the Attorney General of the United States, to the United States Attorney for the Western District of Wisconsin and to the Attorneys General of the plaintiff states and District a disclosure statement summarizing known material evidence and information related to the Complaint, in accordance with the provisions of 31 U.S.C. §3730(b) (2) and analogous state statutes. This disclosure statement is supported by material evidence in defendant's possession.

11.      This court has personal jurisdiction over the defendant under 31 U.S.C. §3732(a) because defendant submitted false or fraudulent claims to the Government through its stores, and defendant has made, used, or caused to be made or used, false or fraudulent records to get false or fraudulent claims paid or approved by the Government. Defendant can be found in, is authorized to transact business in, and is now transacting business in the State of Wisconsin.

12.      Venue is proper in this District under 31 U.S.C. §3732(a) and 28 U.S.C. §1391.

## PARTIES

13.      Plaintiff and Relator Stephani LeFlore is a licensed pharmacist currently working for CVS Caremark as a full-time overnight pharmacist in St. Paul, Minnesota.  Ms. LeFlore previously held positions as a pharmacy manager for Walgreen Corporation and as a staff pharmacist for Merwin Long Term Care pharmacy, both in Minnesota.  Ms. LeFlore graduated

from the University of Minnesota, College of Pharmacy and has been a licensed pharmacist in

Minnesota since 1999.

    14.    Plaintiff and Relator is a U.S. citizen and she brings this action on her own behalf

and on behalf of the government.

    15.    Defendant CVS Caremark Co. (hereinafter referred to as "CVS Caremark"), is a

nationwide retail pharmacy corporation headquartered in Woonsocket, Rhode Island. The

acronym CVS stands for "Consumer Value Stores" and the corporation has been in the retail

pharmacy business since 1963.  CVS Caremark has $80 billion in annual sales and was ranked

24th in Fortune 500.  In the past, it has settled at least one False Claim Act lawsuit alleging

Medicaid fraud, entered a concomitant corporate integrity agreement, and paid millions of

dollars to settle that case. CVS Caremark has at least 6,300 retail pharmacy stores in 44 states,

and the District of Columbia.

## COUNT ONE

### FEDERAL FALSE CLAIMS ACT
### OVERBILLING ON DUAL-ELIGIBLE MEDICAID CUSTOMERS

    16.    Plaintiffs incorporate by reference and re-allege Paragraphs 1-15 as if fully set

forth herein. This Count is brought by Relator in the name of the United States under the qui tam

provisions of 31 U.S.C. §3730 for defendant's violation of 31 U.S.C. §3729.

### THE DUAL-ELIGIBLE ASSIGNMENT SYSTEM

    17.    CVS Caremark provides pharmacy prescription medication service

("prescriptions") to thousands of poor, disabled and elderly persons under the federal Medicaid

program.

18.     The federal Medicaid program is administered by the states and their agencies by agreement with the United States government. The payment of prescription medications is part of the federal Medicaid program.

19.     Funding for federal Medicaid programs, administered by the states, is shared between the federal government and the states with approximately fifty percent paid by federal funding and fifty percent paid by the state.  This percentage can vary from state to state based on economic conditions within the state.

20.     Every CVS Caremark pharmacy participates in the federal Medicaid program in the state in which the CVS Caremark pharmacy is located.

21.     Every participating provider under the federal Medicaid program is required to comply with all statutes, codes, rules and regulations both state and federal, pertaining to the Medicaid program.

22.     In addition to providing prescription service to federal Medicaid patients, CVS Caremark provides prescription service to patients who have private health insurance. CVS Caremark prides itself and advertises that it is a participating pharmacy provider for most prescription insurance plans nationwide.

23.     Some customers that have private health insurance may also become eligible for Medicaid.  These patients are referred to as dual-eligible patients or customers.

24.     When these dual-eligible patients apply for benefits to the state agency that administers Medicaid, they are required under 42 U.S.C. §1396k (a) (1) (A) and 42 C.F.R. §433.145 to assign to the State any rights they have under their private insurance plan.  The statute and rule mandate:

42 U.S.C. § 1396k(a)(1)(A):

§ 1396k. Assignment, enforcement, and collection of rights of payment for medical care; establishment of procedures pursuant to State plan; amounts retained by State

**(a)** For the purpose of assisting in the collection of medical support payments and other payments for medical care owed to recipients of medical assistance under the State plan approved under this subchapter, a State plan for medical assistance shall—
**(1)** provide that, as a condition of eligibility for medical assistance under the State plan to an individual who has the legal capacity to execute an assignment for himself, the individual is required—
**(A)** to assign the State any rights, of the individual or of any other person who is eligible for medical assistance under this subchapter and on whose behalf the individual has the legal authority to execute an assignment of such rights, to support (specified as support for the purpose of medical care by a court or administrative order) and to payment for medical care from any third party;


42 C.F.R. §433.145:

§ 433.145 Assignment of rights to benefits--State plan requirements.

**(a)**      A State plan must provide that, as a condition of eligibility, each legally able applicant or recipient is required to:
**(1)** Assign to the Medicaid agency his or her rights, or the rights of any other individual eligible under the plan for whom he or she can legally make an assignment, to medical support and to payment for medical care from any third party;

The states obtain such an assignment from every Medicaid eligible customer as a condition to receipt of Medicaid.

25.    One of the important rights an individual has under their private insurance plan is the right to buy prescription medications at a discounted, lower price. In most cases, those medications are paid for by the private insurance company less a small co-pay or deductible amount per prescription that is paid by the patient.  In all provider contracts CVS Caremark enters into with private insurance companies and pharmacy benefit management companies ("PBMs"), CVS Caremark agrees to accept as payment in full these lesser amounts agreed upon with the private insurance company.  Billing for more than this amount is contrary to the private

insurance contract and the assignment of that contracted rate to Medicaid.  This is one of the rights and benefits assigned to Medicaid.

26.     Private insurance companies hire pharmacy benefit management companies ("PBMs") to manage and administer the prescription drug benefit under their policies.  These PBMs are very efficient and effective at obtaining discounts and purchasing benefits for the customers of the private insurance companies.  This results in better pricing of prescriptions for the insured patients.  CVS Caremark owns and operates one of the largest PBMs in the United States, Caremark Pharmacy Services.

27.     In virtually every state, which includes all states in which CVS Caremark provides prescription services, PBMs are able to obtain better pricing on prescription medications than the state agency obtains when it buys drugs for total Medicaid eligible patients, those without private insurance (not dual-eligible). Stated another way, private health insurance companies usually purchase prescriptions at lower prices than state Medicaid agencies.

28.     By virtue of the assignment provisions of 42 U.S.C. §1396k (a) (1) (A) and 42 C.F.R. §433.145, and the assignment document obtained by the states from dual-eligible Medicaid patients, the government obtains the rights and benefits of the private health insurance for these dual-eligible patients. One of these rights or benefits includes the lower prices on prescriptions medications.

29.     The government requires that Medicaid is the payor of last resort.  This statement means that Medicaid will pay for the covered medical or pharmacy service only after all other sources of payment have paid their required amount.  In the case of prescription medications, this would be the co-pay or deductible remaining after the private insurance company (or its connected PBM) has priced the prescription and paid their required amount. This is required by

the pertinent Medicaid rule or regulation for each of the named plaintiff states. For example, in

Minnesota, the Minnesota Health Care Programs (NHCP) Provider Manual, at Chapter 22,

February, 2005 Edition, page 15, dictates:

> "For recipients with private health insurance, the provider may not bill MHCP
> more than the client-liable amount (e.g., co-payment).   An example of correct
> billing is as follows:
>
> °     Submitted charge:  amount allowed by the third party payer;
>
> °     Prior payments:  amount paid by the third party payer; and
>
> °     Co-payment:  the difference between the submitted charge and the
> prior payment.
>
> Providers may need to manually override their system's usual and customary
> charge to prevent overbilling."

Wisconsin's Medicaid Pharmacy Handbook dictates:

"Providers cannot bill Medicaid recipients for copayments required by commercial health

insurance carriers. A pharmacy should bill Wisconsin Medicaid for the insurance copayment

instead of billing the recipient after commercial health insurance has reimbursed the pharmacy

for the bill. Medicaid recipients are responsible only for the Medicaid copayments if applicable."

      30.      By virtue of the assignment to the government by dual-eligible patients, the initial

price on which all reimbursement must be based is the lower price calculated by the PBM for the

private insurance company, not the higher price the state Medicaid program would calculate and

pay for non-dual-eligible patients. This lower price is a right and benefit assigned by the dual-

eligible patient.

31.     The party to these transactions with the knowledge and ability to comply with the lower assigned-right price is the providing pharmacy, in this case CVS Caremark.

32.     CVS Caremark is one of the nation's largest providers of prescription services, a Fortune 500 Company, owner of one of the nation's largest PBMs and a sophisticated national corporation with vast resources to research and understand the law as it pertains to pharmacy and the reimbursement of prescription medications.

33.     CVS Caremark negotiates and enters into contracts with virtually every PBM and private insurance company in the country.  CVS Caremark knows the prices and reimbursement rates that they receive from these private insurance companies and PBMs.

34.     CVS Caremark knows, via the law and the contracts they sign, the prices that the dual-eligible patients they serve assign to the states.

35.     The state Medicaid agencies are not a party to the private health insurance or PBM contracts that CVS Caremark agrees to. Thus, the government officials do not know the price benefit that the dual-eligible patient assigns to the government. The state Medicaid agency is at the mercy of the provider, CVS Caremark, to accurately calculate the assigned benefit of the drug pricing.

36.     Likewise, the dual-eligible patient is not a party to the private health insurance and PBM contracts that CVS Caremark enters, and thus would not know the price they have legally assigned to the state Medicaid agency.  The dual-eligible patient also relies on the provider, CVS Caremark, to accurately calculate and assign the benefit to the government.

## THE FRAUD

37.     Defendant CVS Caremark perpetrated the violations of the False Claims Act and generated the false claims by using a pharmacy computer system known as RX2000.  RX2000

was custom programmed under the control and direction of CVS Caremark.  RX2000 is used in

all CVS Caremark pharmacy stores nationwide for the filling and billing of prescriptions. CVS

Caremark has used a portion of its online intranet and CD-Rom tutorial, called "Third Party

Billing Compliance Training v.2.0" ("tutorial") to instruct pharmacy personnel in the use of

RX2000 and its billing systems, including the billing of dual-eligible claims.  The billing of dual-

eligible claims involves an internal program of RX2000.  After the pharmacist or technician

loads the patient's private insurance information and Medicaid information and indicates that

Medicaid is secondary, the billing is automatic at the time of processing the prescription.  Both

the private insurance claim and the claim presented to Medicaid are performed electronically,

online and instantaneously at the time or dispensing.  Both payors (private and Medicaid)

provide a claim reference number at the time of claim submission. This internal program of

RX2000 bills more for dual eligible patients than was allowed under the assignment of rights and

benefits provisions of federal law and contract provisions of private insurance companies. For

example, when a dual-eligible patient's private insurance requires the patient to pay a $10.00 co-

pay for a prescription, the RX2000 system in fact billed and caused receipt of a higher payment

from Medicaid.  Relator has personally witnessed and used RX2000 pharmacy system,

customized by CVS Caremark and has been required to perform the "Third Party Billing

Compliance Training" tutorials, and was directed by CVS Caremark management and co-

employees to use the procedures taught in the tutorials. The result was wrongful overpayment by

the government from beginning use of RX2000 to the present and continuing. The RX2000

software prints a claim reference number for each claim submission on each bag receipt supplied

to the patient.  Relator has personally viewed hundreds of these bag receipts and claim reference

numbers.

38.     A representative example of the difference is provided on attached Exhibit A. The example is a prescription for 30 Adderall XR 25mg capsules filled on 8/27/08, prescription number 0329231, from CVS Caremark Co. store #7060 in St. Paul, Minnesota.  In this deceptive submission the private insurance company Medco Health (aka Paid Prescription) was billed and provided a claim reference number of 07PQPQd.  Relator, Stephani LeFlore called Medco Health on 9/09/08 and they indicated the patient should be charged a $25.00 copay.  Also in this deceptive submission Minnesota Medicaid was billed and provided a claim reference number of 80824300400007.  Relator called Minnesota Medicaid on 9/09/08 and they indicated they paid $26.75 on the claim, $1.75 more than they were required to pay.  The patient was also required to pay a $3.00 copayment resulting in a gross overpayment to CVS Caremark of $4.75.

39.     Based upon the experience and training of the Relator employee of CVS Caremark, the electronic training instructions of CVS Caremark, and the oral and written directives of other CVS Caremark employees, many thousands of these false claims have been submitted by CVS Caremark stores for Medicaid payment from the past to the present and continuing.

## RELATORS' DISCOVERY OF THE FRAUD

40.     Relator Stephani LeFlore started as a pharmacist at CVS Caremark store #7060 in July 2008 in St. Paul, Minnesota. As an experienced pharmacy manager, Ms. LeFlore was aware that there is potential for fraudulent billing involving dual eligible patients.

41.     Ms. LeFlore observed that the RX2000 pharmacy system used by CVS Caremark does not present the billing and payment amount information on the patient bag receipts and it does not make it available to the pharmacist or technician processing prescriptions.

42.     Ms. LeFlore decided to check a sampling of claims (as described in paragraph 38) to determine if dual eligible patients were being billed correctly. Ms. LeFlore did so by calling the private insurance company to determine the actual co-pay the patient was to have paid; she then called the state Medicaid office directly to determine how much Medicaid paid on the same prescription. She discovered further proof of the overbilling of Medicaid.

43.     CVS Caremark has within its exclusive possession and control documents that would allow plaintiffs to plead this fraud with greater specificity, including specific damages, and numbers of violations. Relator has viewed many of these documents in the course of their employment at CVS Caremark. These documents are considered protected health information ("PHI") and are protected by state and federal privacy laws. Virtually all of the documentation of this fraud is contained on paper and on electronic media in the exclusive possession and control of CVS Caremark at their stores and Woonsocket, Rhode Island headquarters.

44.     Documents that would evidence the fraud include but are not limited to: the original prescriptions, data entries into the CVS Caremark RX2000 computer system, contracts signed with private insurance companies and PBMs, remittance (payment) advices supplied by private insurance companies, Medicaid agencies and PBMs, computer transaction data received back from private insurance companies, Medicaid agencies and PBMs.

45.     The State Medicaid Agencies have been unaware of CVS Caremark not providing the government with this pricing benefit that was assigned to the government by law. Through lack of personnel, advanced technological equipment and especially the lack of knowledge and access to information from CVS Caremark, the state Medicaid agencies have failed to detect this fraud.

46.     By virtue of the above-described acts, defendant CVS Caremark knowingly presented or caused to be presented, directly or indirectly to officers, employees or agents of the United States, false or fraudulent claims for payment or approval.

47.     By virtue of the above-described acts, defendant CVS Caremark knowingly made, used, or caused to be made or used, false records and statements to get false or fraudulent claims paid or approved by the United States.

48.     By virtue of the above-described acts, defendant CVS Caremark conspired to defraud the United States by getting false or fraudulent claims allowed or paid.

49.     The amounts of the false or fraudulent claims to the United States were material.

50.     Plaintiff, United States, being unaware of the falsity of the claims, records and/or statements made by defendant, and in reliance on the accuracy thereof, paid defendant amounts in excess of those required to be paid pursuant to the private insurance contract rights of dual-eligible patients that were assigned to the government. These amounts were also in excess of that required by the Medicaid reimbursement rules of the plaintiff states that essentially required the government to only pay the co-pay that the customer would have been responsible for.

51.     From at least the time that CVS began using RX2000 through today, by reason of CVS Caremark's conduct described above, the Government has been damaged for millions of dollars.

**COUNT TWO**

**CALIFORNIA FALSE CLAIMS ACT**

52.     Plaintiffs incorporate by reference and re-allege Paragraphs 1 to 51 as if fully set forth herein. This Count is brought by Relator in the name of the State of California under the

qui tam provisions of the California False Claims Act, California Government Code §§12650 et seq..

53.     CVS Caremark at all times relevant to this action, sold and continues to sell prescription medications in the State of California. CVS Caremark currently conducts business in California through 381 retail pharmacies.

54.     By virtue of the above-described acts, among others, defendant CVS Caremark knowingly presented or caused to be presented, directly or indirectly to employees, officers and or agents of the State of California, false or fraudulent claims for payment or approval.

55.     By virtue of the above-described acts, among others, defendant CVS Caremark knowingly makes, uses, or causes to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of California.

56.     By virtue of the above-described acts, defendant CVS Caremark conspired to defraud the State of California by getting false or fraudulent claims allowed or paid.

57.     The amounts of the false or fraudulent claims to the State of California were material.

58.     Plaintiff State of California, being unaware of the falsity of the claims, records and/or statements made by defendant, and in reliance on the accuracy thereof, paid defendant amounts in excess of those required to be paid pursuant to the private insurance contract rights of dual-eligible patients that were assigned to the government.  These amounts were also in excess of what was required for reimbursement by this state's Medicaid reimbursement rule pertaining to dual-eligible Medicaid customers.

## COUNT THREE

## DELAWARE FALSE CLAIMS AND REPORTING ACT

59.     Plaintiffs incorporate by reference and re-allege Paragraphs 1 to 58 as if fully set

forth herein. This Count is brought by Relator in the name of the State of Delaware under the qui

tam provisions of the Delaware False Claims and Reporting Act, Delaware Statute Title 6, §§

1201 et seq.

60.     CVS Caremark, at all times relevant to this action, sold and continues to sell

prescription medications in the State of Delaware. CVS Caremark currently conducts business in

Delaware through 1 retail pharmacy.

61.     By virtue of the above-described acts, among others, defendant CVS Caremark

knowingly presented or caused to be presented, directly or indirectly to officers, employees or

agents of the State of Delaware, false or fraudulent claims for payment or approval.

62.     By virtue of the above-described acts, among others, defendant CVS Caremark

knowingly made, used, or caused to be made or used, false records and statements to get false or

fraudulent claims paid or approved by the State of Delaware.

63.     By virtue of the above-described acts, defendant conspired to defraud the State of

Delaware by getting false or fraudulent claims allowed or paid.

64.     The amounts of the false or fraudulent claims to the State of Delaware were

material.

65.     Plaintiff, State of Delaware, being unaware of the falsity of the claims, records

and/or statements made by defendant, and in reliance on the accuracy thereof, paid defendant

amounts in excess of those required to be paid pursuant to the private insurance contract rights

covering dual-eligible patients that were assigned to the government. These amounts were also in

excess of what was required for reimbursement by this state's Medicaid reimbursement rule pertaining to dual-eligible Medicaid customers.

## COUNT FOUR

## DISTRICT OF COLUMBIA FALSE CLAIMS ACT

66.     Plaintiffs incorporate by reference and re-allege Paragraphs 1 to 65 as if fully set forth herein. This Count is brought by Relator in the name of the District of Columbia under the qui tam provisions of D.C. Stat. §§ 2-308.03 et seq. and D.C. Code Ann. § 1-119.13 et seq.

67.     CVS Caremark, at all times relevant to this action, sold and continues to sell prescription medications in the District of Columbia. CVS Caremark currently conducts business in the District of Columbia through 51 retail pharmacies.

68.     By virtue of the above-described acts, among others, defendant CVS Caremark knowingly presented or caused to be presented, directly or indirectly to officers, employees or agents of the District of Columbia, false or fraudulent claims for payment or approval.

69.     By virtue of the above-described acts, among others, defendant CVS Caremark knowingly made, used or caused to be made or used, false records and statements to get false or fraudulent claims paid or approved by the District of Columbia.

70.     By virtue of the above-described acts, defendants conspired to defraud the District of Columbia by getting false or fraudulent claims allowed or paid.

71.     The amounts of the false or fraudulent claims to the District of Columbia were material.

72.     Plaintiff, District of Columbia, being unaware of the falsity of the claims, records and/or statements made by defendant, and in reliance on the accuracy thereof, paid defendant amounts in excess of those required to be paid pursuant to the private insurance contract rights

covering dual-eligible patients that were assigned to the government. These amounts were also in excess of what was required for reimbursement by this state's Medicaid reimbursement rule pertaining to dual-eligible Medicaid customers.

**COUNT FIVE**

**FLORIDA FALSE MEDICAID CLAIMS ACT**

73.     Plaintiffs incorporate by reference and re-allege paragraphs 1 to 72 as if fully set forth herein. This Count is brought by Relator in the name of the State of Florida under the qui tam provisions of the Florida False Claims Act, §§ 68.081 et seq.

74.     CVS Caremark, at all times relevant to this action, has upon information and belief sold and continues to sell prescription medications in the State of Florida. CVS Caremark currently conducts business in Florida through 672 retail pharmacies.

75.     By virtue of the above-described acts, among others, defendant CVS Caremark knowingly presented or caused to be presented, directly or indirectly, to officers, employees or agents of the State of Florida, false or fraudulent claims for payment or approval.

76.     By virtue of the above-described acts, among others, defendant CVS Caremark knowingly made, uses, or causes to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of Florida.

77.     By virtue of the above-described acts, defendants conspired to defraud the State of Florida by getting false or fraudulent claims allowed or paid.

78.     Plaintiff, State of Florida, being unaware of the falsity of the claims, records and/or statements made by defendant, and in reliance on the accuracy thereof, paid defendant amounts in excess of those required to be paid pursuant to the private insurance contract rights covering dual-eligible patients that were assigned to the government. These amounts were also

in excess of what was required for reimbursement by this state's Medicaid reimbursement rule pertaining to dual-eligible Medicaid customers.

## COUNT SIX

## GEORGIA FALSE MEDICAID CLAIMS ACT

79.     Plaintiffs incorporate by reference and re-allege paragraphs 1 to 78 as if fully set forth herein. This Count is brought by Relator in the name of the State of Georgia under the qui tam provisions of the Georgia False Medical Claims Act, §§ 49-4-168.1 et seq.

80.     CVS Caremark, at all times relevant to this action, has upon information and belief sold and continues to sell prescription medications in the State of Georgia. CVS Caremark currently conducts business in Georgia through 287 retail pharmacies.

81.     By virtue of the above-described acts, among others, defendant CVS Caremark knowingly presented or caused to be presented, directly or indirectly, to officers, employees or agents of the State of Georgia, false or fraudulent claims for payment or approval.

82.     By virtue of the above-described acts, among others, defendant CVS Caremark knowingly made, uses, or causes to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of Georgia.

83.     By virtue of the above-described acts, defendants conspired to defraud the State of Georgia by getting false or fraudulent claims allowed or paid.

84.     The amounts of the false or fraudulent claims to the State of Georgia were material.

85.     Plaintiff, State of Georgia, being unaware of the falsity of the claims, records and/or statements made by defendant, and in reliance on the accuracy thereof, paid defendant amounts in excess of those required to be paid pursuant to the private insurance contract

covering dual-eligible patients that were assigned to the government. These amounts were also in

excess of what was required for reimbursement by this state's Medicaid reimbursement rule

pertaining to dual-eligible Medicaid customers.

## COUNT SEVEN

## HAWAII FALSE CLAIMS ACT

86.     Plaintiffs incorporate by reference and re-allege Paragraphs 1 to 85 as if fully set

forth herein. This Count is brought by Relator in the name of the State of Hawaii under the qui

tam provisions of Hawaii Revised Statute §§ 661-21 et seq.

87.     CVS Caremark, at all times relevant to this action, sold and continues to sell

prescription medications in the State of Hawaii.  CVS Caremark currently conducts business in

Hawaii through 1 retail pharmacy.

88.     By virtue of the above-described acts, among others, defendant CVS Caremark

knowingly presented or caused to be presented, directly or indirectly to officers, employee or

agents of the State of Hawaii, false or fraudulent claims for payment or approval.

89.     By virtue of the above-described acts, among others, defendant CVS Caremark

knowingly made, used or caused to be made or used, false records and statements to get false or

fraudulent claims paid or approved by the State of Hawaii.

90.     By virtue of the above-described acts, defendant conspired to defraud the State of

Hawaii by getting false or fraudulent claims allowed or paid.

91.     The amounts of the false or fraudulent claims to the State of Hawaii were

material.

92.     Plaintiff, State of Hawaii, being unaware of the falsity of the claims, records

and/or statements made by defendant, and in reliance on the accuracy thereof, paid defendant

amounts in excess of those required to be paid pursuant to the private insurance contract covering dual-eligible patients that were assigned to the government. These amounts were also in excess of what was required for reimbursement by this state's Medicaid reimbursement rule pertaining to dual-eligible Medicaid customers.

## COUNT EIGHT

## ILLINOIS WHISTLEBLOWER REWARD AND PROTECTION ACT

93.     Plaintiffs incorporate by reference and re-allege Paragraphs 1 to 92 as if fully set forth herein. This Count is brought by Relator in the name of the State of Illinois under the qui tam provisions of 740 ILCS 175/4 for defendant's violation of 740 ILCS 175/3 and 740 Ill. Comp. Stat. Ann. §§ 175/1 et seq.

94.     CVS Caremark, at all times relevant to this action, sold and continues to sell prescription medications in the State of Illinois.  CVS Caremark currently conducts business in Illinois through 227 retail pharmacies.

95.     By virtue of the above-described acts, among others, defendant CVS Caremark knowingly presented or caused to be presented, directly or indirectly to officers, employee or agents of the State of Illinois, false or fraudulent claims for payment or approval.

96.     By virtue of the above-described acts, among others, defendant CVS Caremark knowingly made, used or caused to be made or used, false records and statements to get false or fraudulent claims paid or approved by the State of Illinois.

97.     By virtue of the above-described acts, defendant conspired to defraud the State of Illinois by getting false or fraudulent claims allowed or paid.

98.     The amounts of the false or fraudulent claims to the State of Illinois were material.

99.    Plaintiff, State of Illinois, being unaware of the falsity of the claims, records and/or statements made by defendant, and in reliance on the accuracy thereof, paid defendant amounts in excess of those required to be paid pursuant to the private insurance contract covering dual-eligible patients that were assigned to the government.  These amounts were also in excess of what was required for reimbursement by this state's Medicaid reimbursement rule pertaining to dual-eligible Medicaid customers.

**COUNT NINE**

**INDIANA  FALSE CLAIMS AND WHISTLEBLOWER PROTECTION ACT**

100.    Plaintiffs incorporate by reference and re-allege Paragraphs 1 to 99 as if fully set forth herein. This Count is brought by Relatorin the name of the State of Indiana under the qui tam provisions of the Indiana False Claims and Whistleblower Protection Act Indiana Code 5-11-5.5 et seq.

101.    CVS Caremark, at all times relevant to this action, sold and continues to sell prescription medications in the State of Indiana through 281 retail pharmacies.

102.    By virtue of the above-described acts, among others, defendant CVS Caremark knowingly presented or caused to be presented, directly or indirectly to employees, officers and or agents of the State of Indiana, false or fraudulent claims for payment or approval.

103.    By virtue of the above-described acts, among others, defendant CVS Caremark knowingly made, uses, or causes to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of Indiana.

104.    By virtue of the above-described acts, defendant CVS Caremark conspired to defraud the State of Indiana by getting false or fraudulent claims allowed or paid.

105.    The amounts of the false or fraudulent claims to the State of Indiana were material.

106.    Plaintiff, State of Indiana, being unaware of the falsity of the claims, records and/or statements made by defendant, and in reliance on the accuracy thereof, paid defendant amounts in excess of those required to be paid pursuant to the private insurance contract rights covering dual-eligible patients that were assigned to the government.  These amounts were also in excess of what was required for reimbursement by this state's Medicaid reimbursement rule pertaining to dual-eligible Medicaid customers.

## COUNT TEN

## LOUISIANA MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW

107.    Plaintiffs incorporate by reference and re-allege Paragraphs 1 to 106 as if fully set forth herein. This Count is brought by Relator in the name of the State of Louisiana under the qui tam provisions of the Louisiana Medical Assistance Programs Integrity Law, LA. REV. STAT. ANN. § 46:438.1 et seq.

108.    CVS Caremark, at all times relevant to this action, sold and continues to sell prescription medications in the State of Louisiana. CVS Caremark currently conducts business in Louisiana through 88 retail pharmacies.

109.    By virtue of the above-described acts, among others, defendant CVS Caremark knowingly presented or caused to be presented, directly or indirectly to officers, employees or agents of the State of Louisiana, false or fraudulent claims for payment or approval.

110.    By virtue of the above-described acts, among others, defendant CVS Caremark knowingly made, used or caused to be made or used, false records and statements to get false or fraudulent claims paid or approved by the State of Louisiana.

111. By virtue of the above-described acts, defendants conspired to defraud the State of Louisiana by getting false or fraudulent claims allowed or paid.

112. The amounts of the false or fraudulent claims to the State of Louisiana were material.

113. Plaintiff, State of Louisiana, being unaware of the falsity of the claims, records and/or statements made by defendant, and in reliance on the accuracy thereof, paid defendant amounts in excess of those required to be paid pursuant to the private insurance contract covering dual-eligible patients that were assigned to the government. These amounts were also in excess of what was required for reimbursement by this state's Medicaid reimbursement rule pertaining to dual-eligible Medicaid customers.

**COUNT ELEVEN**

**MASSACHUSETTS FALSE CLAIMS ACT**

114. Plaintiffs incorporate by reference and re-allege paragraphs 1 to 113 as if fully set forth herein. This Count is brought by Relator in the name of the Commonwealth of Massachusetts under the qui tam provisions of the Massachusetts False Claims Act, Mass. Ann. Laws ch. 12, §§ 5 et seq.

115. CVS Caremark, at all times relevant to this action, has upon information and belief sold and continues to sell prescription medications in the Commonwealth of Massachusetts. CVS Caremark currently conducts business in Massachusetts through 332 retail pharmacies.

116. By virtue of the above-described acts, among others, defendant CVS Caremark knowingly presented or caused to be presented, directly or indirectly to employees, officers and

or agents of the Commonwealth of Massachusetts, false or fraudulent claims for payment or approval.

117.    By virtue of the above-described acts, among others, defendant CVS Caremark knowingly made, uses, or causes to be made or used, false records or statements to get false or fraudulent claims paid or approved by the Commonwealth of Massachusetts.

118.    By virtue of the above-described acts, defendants conspired to defraud the Commonwealth of Massachusetts by getting false or fraudulent claims allowed or paid.

119.    Plaintiff, Commonwealth of Massachusetts, being unaware of the falsity of the claims, records and/or statements made by defendant, and in reliance on the accuracy thereof, paid defendant amounts in excess of those required to be paid pursuant to the private insurance contract rights covering dual-eligible patients that were assigned to the government.    These amounts were also in excess of what was required for reimbursement by this state's Medicaid reimbursement rule pertaining to dual-eligible Medicaid customers.

## COUNT TWELVE

## MICHIGAN FALSE CLAIMS ACT

120.    Plaintiffs incorporate by reference and re-allege paragraphs 1 to 119 as if fully set forth herein. This Count is brought by Relator in the name of the State of Michigan under the qui tam provisions of the Michigan Medicaid False Claims Act, §§ 400.601 and Michigan Health Care False Claims Act §§ 752.1001 et seq.

121.    CVS Caremark, at all times relevant to this action, has upon information and belief sold and continues to sell prescription medications in the State of Michigan.  CVS Caremark currently conducts business in Michigan through 237 retail pharmacies.

122.     By virtue of the above-described acts, among others, defendant CVS Caremark knowingly presented or caused to be presented, directly or indirectly to employees, officers and or agents of the State of Michigan, false or fraudulent claims for payment or approval.

123.     By virtue of the above-described acts, among others, defendant CVS Caremark knowingly made, uses, or causes to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of Michigan.

124.     By virtue of the above-described acts, defendants conspired to defraud the State of Michigan by getting false or fraudulent claims allowed or paid.

125.     Plaintiff, State of Michigan, being unaware of the falsity of the claims, records and/or statements made by defendant, and in reliance on the accuracy thereof, paid defendant amounts in excess of those required to be paid pursuant to the private insurance contract rights covering dual-eligible patients that were assigned to the government.  These amounts were also in excess of what was required for reimbursement by this state's Medicaid reimbursement rule pertaining to dual-eligible Medicaid customers.

## COUNT THIRTEEN

## MONTANA FALSE CLAIMS ACT

126.     Plaintiffs incorporate by reference and re-allege paragraphs 1 to 125 as if fully set forth herein. This Count is brought by Relator in the name of the State of Montana under the qui tam provisions of the Montana False Claims Act, Montana Code Chapter 465, et seq. and §§ 17-8-401 et seq.

127.     CVS Caremark, at all times relevant to this action, has upon information and belief sold and continues to sell prescription medications in the State of Montana.  CVS Caremark currently conducts business in Montana through 8 retail pharmacies.

128.    By virtue of the above-described acts, among others, defendant CVS Caremark knowingly presented or caused to be presented, directly or indirectly to employees, officers and or agents of the State of Montana, false or fraudulent claims for payment or approval.

129.    By virtue of the above-described acts, among others, defendant CVS Caremark knowingly made, uses, or causes to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of Montana.

130.    By virtue of the above-described acts, defendants conspired to defraud the State of Montana by getting false or fraudulent claims allowed or paid.

131.    The amounts of the false or fraudulent claims to the State of Montana were material.

132.    Plaintiff, State of Montana, being unaware of the falsity of the claims, records and/or statements made by defendant, and in reliance on the accuracy thereof, paid defendant amounts in excess of those required to be paid pursuant to the private insurance contract rights covering dual-eligible patients that were assigned to the government.  These amounts were also in excess of what was required for reimbursement by this state's Medicaid reimbursement rule pertaining to dual-eligible Medicaid customers.

## COUNT FOURTEEN

## NEW HAMPSHIRE FALSE CLAIMS ACT

133.    Plaintiffs incorporate by reference and re-allege paragraphs 1 to 132 as if fully set forth herein. This Count is brought by Relator in the name of the State of New Hampshire under the qui tam provisions of the New Hampshire False Claims Act, §167:61-b, et seq.

134.     CVS Caremark, at all times relevant to this action, has upon information and belief sold and continues to sell prescription medications in the State of New Hampshire.  CVS Caremark currently conducts business in New Hampshire through 28 retail pharmacies.

135.     By virtue of the above-described acts, among others, defendant CVS Caremark knowingly presented or caused to be presented, directly or indirectly, to an officer or employee of the State of New Hampshire false or fraudulent claims for payment or approval.

136.     By virtue of the above-described acts, among others, defendant CVS Caremark knowingly made, uses, or causes to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of New Hampshire.

137.     By virtue of the above-described acts, defendants conspired to defraud the State of New Hampshire by getting false or fraudulent claims allowed or paid.

138.     The amounts of the false or fraudulent claims to the State of New Hampshire were material.

139.     Plaintiff, State of New Hampshire, being unaware of the falsity of the claims, records and/or statements made by defendant, and in reliance on the accuracy thereof, paid defendant amounts in excess of those required to be paid pursuant to the private insurance contract rights covering dual-eligible patients that were assigned to the government.  These amounts were also in excess of what was required for reimbursement by this state's Medicaid reimbursement rule pertaining to dual-eligible Medicaid customers.

## COUNT FIFTEEN

## NEW JERSEY FALSE CLAIMS ACT

140.    Plaintiffs incorporate by reference and re-allege paragraphs 1 to 139 as if fully set forth herein. This Count is brought by Relator in the name of the State of New Jersey under the qui tam provisions of the New Jersey False Claims Act.

141.    CVS Caremark, at all times relevant to this action, has upon information and belief sold and continues to sell prescription medications in the State of New Jersey.  CVS Caremark currently conducts business in New Jersey through 251 retail pharmacies.

142.    By virtue of the above-described acts, among others, defendant CVS Caremark knowingly presented or caused to be presented, directly or indirectly to employees, officers or agents of the State of New Jersey, false or fraudulent claims for payment or approval.

143.    By virtue of the above-described acts, among others, defendant CVS Caremark knowingly made, uses, or causes to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of New Jersey.

144.    By virtue of the above-described acts, defendants conspired to defraud the State of New Jersey by getting false or fraudulent claims allowed or paid.

145.    The amounts of the false or fraudulent claims to the State of New Jersey were material.

146.    Plaintiff, State of New Jersey, being unaware of the falsity of the claims, records and/or statements made by defendant, and in reliance on the accuracy thereof, paid defendant amounts in excess of those required to be paid pursuant to the private insurance contract rights covering dual-eligible patients that were assigned to the government.  These amounts were also

in excess of what was required for reimbursement by this state's Medicaid reimbursement rule pertaining to dual-eligible Medicaid customers.

## COUNT SIXTEEN

## NEW MEXICO FALSE CLAIMS ACT

147.    Plaintiffs incorporate by reference and re-allege paragraphs 1 to 146 as if fully set forth herein. This Count is brought by Relator in the name of the State of New Mexico under the qui tam provisions of the New Mexico False Claims Act, N.M. Stat. Ann. 27-14-1 et seq.

148.    CVS Caremark, at all times relevant to this action, has upon information and belief sold and continues to sell prescription medications in the State of New Mexico.  CVS Caremark currently conducts business in New Mexico through 2 retail pharmacies.

149.    By virtue of the above-described acts, among others, defendant CVS Caremark knowingly presented or caused to be presented, directly or indirectly to employees, officers or agents of the State of New Mexico, false or fraudulent claims for payment or approval.

150.    By virtue of the above-described acts, among others, defendant CVS Caremark knowingly made, uses, or causes to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of New Mexico.

151.    By virtue of the above-described acts, defendants conspired to defraud the State of New Mexico by getting false or fraudulent claims allowed or paid.

152.    The amounts of the false or fraudulent claims to the State of New Mexico were material.

153.    Plaintiff State of New Mexico, being unaware of the falsity of the claims, records and/or statements made by defendant, and in reliance on the accuracy thereof, paid defendant

amounts in excess of those required to be paid pursuant to the private insurance contract rights covering dual-eligible patients that were assigned to the government. These amounts were also in excess of what was required for reimbursement by this state's Medicaid reimbursement rule pertaining to dual-eligible Medicaid customers.

## COUNT SEVENTEEN

## NEW YORK FALSE CLAIMS ACT

154. Plaintiffs incorporate by reference and re-allege paragraphs 1 to 153 as if fully set forth herein. This Count is brought by Relator in the name of the State of New York under the qui tam provisions of the New York False Claims Act, Article 13 of the State Finance Law §§ 189 et seq.

155. CVS Caremark, at all times relevant to this action, has upon information and belief sold and continues to sell prescription medications in the State of New York. CVS Caremark currently conducts business in New York through 430 retail pharmacies.

156. By virtue of the above-described acts, among others, defendant CVS Caremark knowingly presented or caused to be presented, directly or indirectly to employees, officers or agents of the State of New York, false or fraudulent claims for payment or approval.

157. By virtue of the above-described acts, among others, defendant CVS Caremark knowingly made, uses, or causes to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of New York.

158. By virtue of the above-described acts, defendants conspired to defraud the State of New York by getting false or fraudulent claims allowed or paid.

159. The amounts of the false or fraudulent claims to the State of New York were material.

160.     Plaintiff State of New York, being unaware of the falsity of the claims, records and/or statements made by defendant, and in reliance on the accuracy thereof, paid defendant amounts in excess of those required to be paid pursuant to the private insurance contract rights covering dual-eligible patients that were assigned to the government.  These amounts were also in excess of what was required for reimbursement by this state's Medicaid reimbursement rule pertaining to dual-eligible Medicaid customers.

## COUNT EIGHTEEN

## NEVADA FALSE CLAIMS ACT

161.     Plaintiffs incorporate by reference and re-allege Paragraphs 1 to 160 as if fully set forth herein. This Count is brought by Relator in the name of the State of Nevada under the qui tam provisions of Nevada Rev. Stat. §357.010 et seq., "Submission of False Claims to State or Local Government."

162.     CVS Caremark, at all times relevant to this action, sold and continues to sell prescription medications in the State of Nevada.  CVS Caremark currently conducts business in Nevada through 62 retail pharmacies.

163.     By virtue of the above-described acts, among others, defendant CVS Caremark knowingly presented or caused to be presented, directly or indirectly to officers, employees or agents of the State of Nevada, false or fraudulent claims for payment or approval.

164.     By virtue of the above-described acts, among others, defendant CVS Caremark knowingly made, uses, or causes to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of Nevada.

165.     By virtue of the above-described acts, defendants conspired to defraud the State of Nevada by getting false or fraudulent claims allowed or paid.

166.    The amounts of the false or fraudulent claims to the State of Nevada were material.

167.    Plaintiff, State of Nevada, being unaware of the falsity of the claims, records and/or statements made by defendant, and in reliance on the accuracy thereof, paid defendant amounts in excess of those required to be paid pursuant to the private insurance contract rights covering dual-eligible patients that were assigned to the government.  These amounts were also in excess of what was required for reimbursement by this state's Medicaid reimbursement rule pertaining to dual-eligible Medicaid customers.

## COUNT NINETEEN

## OKLAHOMA MEDICAID FALSE CLAIMS ACT

168.    Plaintiffs incorporate by reference and re-allege paragraphs 1 to 167 as if fully set forth herein. This Count is brought by Relator in the name of the State of Oklahoma under the qui tam provisions Oklahoma Medicaid False Claims Act, Title 63 §§ 5053 and §§ 5054, et seq.

169.    CVS Caremark, at all times relevant to this action, has upon information and belief sold and continues to sell prescription medications in the State of Oklahoma.  CVS Caremark currently conducts business in Oklahoma through 34 retail pharmacies.

170.    By virtue of the above-described acts, among others, defendant CVS Caremark knowingly presented or caused to be presented, directly or indirectly, to officers, employees and or agents of the State of Oklahoma, false or fraudulent claims for payment or approval.

171.    By virtue of the above-described acts, among others, defendant CVS Caremark knowingly made, uses, or causes to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of Oklahoma.

172. By virtue of the above-described acts, defendants conspired to defraud the State of Oklahoma by getting false or fraudulent claims allowed or paid.

173. The amounts of the false or fraudulent claims to the State of Oklahoma were material.

174. Plaintiff, State of Oklahoma, being unaware of the falsity of the claims, records and/or statements made by defendant, and in reliance on the accuracy thereof, paid defendant amounts in excess of those required to be paid pursuant to the private insurance contract rights covering dual-eligible patients that were assigned to the government. These amounts were also in excess of what was required for reimbursement by this state's Medicaid reimbursement rule pertaining to dual-eligible Medicaid customers.

## COUNT TWENTY

## RHODE ISLAND STATE FALSE CLAIM ACT

175. Plaintiffs incorporate by reference and re-allege paragraphs 1 to 174 as if fully set forth herein. This Count is brought by Relator in the name of the State of Rhode Island under the qui tam provisions of the Rhode Island State False Claims Act, § 9-1.1-1, et seq.

176. CVS Caremark, at all times relevant to this action, has upon information and belief sold and continues to sell prescription medications in the State of Rhode Island. CVS Caremark currently conducts business in Rhode Island through 55 retail pharmacies.

177. By virtue of the above-described acts, among others, defendant CVS Caremark knowingly presented or caused to be presented, directly or indirectly to employees, officers or agents of the State of Rhode Island, false or fraudulent claims for payment or approval.

178.    By virtue of the above-described acts, among others, defendant CVS Caremark knowingly made, uses, or causes to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of Rhode Island.

179.    By virtue of the above-described acts, defendants conspired to defraud the State of Rhode Island by getting false or fraudulent claims allowed or paid.

180.    The amounts of the false or fraudulent claims to the State of Rhode Island were material.

181.    Plaintiff, State of Rhode Island, being unaware of the falsity of the claims, records and/or statements made by defendant, and in reliance on the accuracy thereof, paid defendant amounts in excess of those required to be paid pursuant to the private insurance contract rights covering dual-eligible patients that were assigned to the government.  These amounts were also in excess of what was required for reimbursement by this state's Medicaid reimbursement rule pertaining to dual-eligible Medicaid customers.

## COUNT TWENTY-ONE

## TENNESSEE MEDICAID FALSE CLAIMS ACT

182.    Plaintiffs incorporate by reference and re-allege Paragraphs 1 to 181 as if fully set forth herein. This Count is brought by Relator in the name of the State of Tennessee under the qui tam provisions of the Tennessee Medicaid False Claims Act; Tenn. Stat. §§ 75-1-181 et seq and §§ 4-18-101 et seq.

183.    CVS Caremark, at all times relevant to this action, sold and continues to sell prescription medications in the State of Tennessee.  CVS Caremark currently conducts business in Tennessee through 127 retail pharmacies.

184.    By virtue of the above-described acts, among others, defendant CVS Caremark knowingly presented or caused to be presented, directly or indirectly to officers, employees or agents of the State of Tennessee, false or fraudulent claims for payment or approval.

185.    By virtue of the above-described acts, among others, defendant CVS Caremark knowingly made, used, or caused to be made or used, false records and statements to get false or fraudulent claims paid or approved by the State of Tennessee.

186.    By virtue of the above-described acts, defendants conspired to defraud the State of Tennessee by getting false or fraudulent claims allowed or paid.

187.    The amounts of the false or fraudulent claims to the State of Tennessee were material.

188.    Plaintiff, State of Tennessee, being unaware of the falsity of the claims, records and/or statements made by defendant, and in reliance on the accuracy thereof, paid defendant amounts in excess of those required to be paid pursuant to the private insurance contract rights covering dual-eligible patients that were assigned to the government.  These amounts were also in excess of what was required for reimbursement by this state's Medicaid reimbursement rule pertaining to dual-eligible Medicaid customers.

## COUNT TWENTY-TWO

## TEXAS MEDICAID FRAUD PREVENTION ACT

189.    Plaintiffs incorporate by reference and re-allege Paragraphs 1 to 188 as if fully set forth herein. This Count is brought by Relator in the name of the State of Texas under the qui tam provisions of the Texas Medicaid Fraud Prevention Act, Texas Human Resources Code, Ch. 36, §§ 36.001-36.117 et seq.  Relator also seeks relator awards under Texas Gov't Code Ann. §§ 531.101 et seq.

190.   CVS Caremark, at all times relevant to this action, sold and continues to sell prescription medications in the State of Texas.  CVS Caremark currently conducts business in Texas through 479 retail pharmacies.

191.   By virtue of the above-described acts, among others, defendant CVS Caremark knowingly presented or caused to be presented, directly or indirectly to employees, officers and or agents of the State of Texas, false or fraudulent claims for payment or approval.

192.   By virtue of the above-described acts, among others, defendant CVS Caremark knowingly made, uses, or causes to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of Texas.

193.   By virtue of the above-described acts, defendants conspired to defraud the State of Texas by getting false or fraudulent claims allowed or paid.

194.   The amounts of the false or fraudulent claims to the State of Texas were material.

195.   Plaintiff, State of Texas, being unaware of the falsity of the claims, records and/or statements made by defendant, and in reliance on the accuracy thereof, paid defendant amounts in excess of those required to be paid pursuant to the private insurance contract rights covering dual-eligible patients that were assigned to the government.  These amounts were also in excess of what was required for reimbursement by this state's Medicaid reimbursement rule pertaining to dual-eligible Medicaid customers.

## COUNT TWENTY-THREE

## VIRGINIA FRAUD AGAINST TAXPAYERS ACT

196.   Plaintiffs incorporate by reference and re-allege Paragraphs 1 to 195 as if fully set forth herein. This Count is brought by Relator in the name of the Commonwealth of Virginia

under the qui tam provisions of the Virginia Fraud Against Taxpayers Act, Ch. 3, Title 8.01-216.1 et seq.

197.    CVS Caremark, at all times relevant to this action, has upon information and belief sold and continues to sell prescription medications in the Commonwealth of Virginia. CVS Caremark currently conducted business in Virginia through 238 retail pharmacies.

198.    By virtue of the above-described acts, among others, defendant CVS Caremark knowingly presented or caused to be presented, directly or indirectly to employees, officers and or agents of the Commonwealth of Virginia, false or fraudulent claims for payment or approval.

199.    By virtue of the above-described acts, among others, defendant CVS Caremark knowingly made, uses, or causes to be made or used, false records or statements to get false or fraudulent claims paid or approved by the Commonwealth of Virginia.

200.    By virtue of the above-described acts, defendants conspired to defraud the Commonwealth of Virginia by getting a false or fraudulent claim allowed or paid.

201.    The amounts of the false or fraudulent claims to the Commonwealth of Virginia were material.

202.    Plaintiff, Commonwealth of Virginia, being unaware of the falsity of the claims, records and/or statements made by defendant, and in reliance on the accuracy thereof, paid defendant amounts in excess of those required to be paid pursuant to the private insurance contract rights covering dual-eligible patients that were assigned to the government.  These amounts were also in excess of what was required for reimbursement by this state's Medicaid reimbursement rule pertaining to dual-eligible Medicaid customers.

## COUNT TWENTY-FOUR

## WISCONSIN FALSE CLAIMS ACT

203.    Plaintiffs incorporate by reference and re-allege Paragraphs 1 to 202 as if fully set forth herein. This Count is brought by Relator in the name of the State of Wisconsin under the qui tam provisions of the Wisconsin False Claims for Medical Assistance, Wisconsin Statute §20.931.

204.    CVS Caremark, at all times relevant to this action, sold and continues to sell prescription medications in the State of Wisconsin. CVS Caremark currently conducts business in the State of Wisconsin through 24 retail pharmacies.

205.    By virtue of the above-described acts, among others, defendant CVS Caremark knowingly presented or caused to be presented, directly or indirectly to officers, employees or agents of the State of Wisconsin, false or fraudulent claims for payment or approval.

206.    By virtue of the above-described acts, among others, defendant CVS Caremark knowingly made, used, or caused to be made or used, false records and statements to get false or fraudulent claims paid or approved by the State of Wisconsin.

207.    By virtue of the above-described acts, defendants conspired to defraud the State of Wisconsin by getting false or fraudulent claims allowed or paid.

208.    The amounts of the false or fraudulent claims to the State of Wisconsin were material.

209.    By virtue of the above-described acts, among others, defendant CVS Caremark knowingly and intentionally, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Wisconsin.

210.    Plaintiff, State of Wisconsin, being unaware of the falsity of the claims, records and/or statements made by defendant, and in reliance on the accuracy thereof, paid defendant amounts in excess of those required to be paid pursuant to the private insurance contract rights covering dual-eligible patients that were assigned to the government.  These amounts were also in excess of what was required for reimbursement by this state's Medicaid reimbursement rule pertaining to dual-eligible Medicaid customers.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs pray for judgment against defendant as follows:

a.    That defendant CVS Caremark is found to have violated and be enjoined from future violations of the federal False Claims Act, and all of the False Claims Acts of the States cited herein.

b.    That this Court enters judgment against defendant CVS Caremark in an amount equal to three times the amount of damages the United States Government has sustained because of defendant's false or fraudulent claims, plus the maximum civil penalty for each violation of 31 U.S.C. §3729.

c.    That plaintiffs be awarded the maximum amount allowed pursuant to § 3730(d) of the False Claims Act.

d.    That this Court enters judgment against defendant CVS Caremark for the maximum amount of damages and the maximum amounts of civil penalties under each False Claim Act of the states and District cited herein, and all other relief to which they are entitled pursuant to said laws.

e.    That the Relator receive the maximum rewards provided for

Relator under the federal False Claims Act and analogous acts and statutes of the states listed above, District of Columbia and Missouri Code Section 191.907.

   f.  That plaintiffs be awarded attorneys fees, interest and all costs of this action.

   g.  The defendant should provide a data file of all over charges to each State Medicaid agency, so the Medicaid agency can correct the Medicaid account of each patient.

   h.  That plaintiffs recover such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury on all claims.

Respectfully Submitted,

**WOJTALEWICZ LAW FIRM, LTD.**


By  /s/Brian Wojtalewicz
   Brian Wojtalewicz
   Attorney for Plaintiffs/Relators
   MN. LIC. 118369
   139 N. Miles St., P.O. Box 123
   Appleton, MN 56208-0123
   (320)289-2363
   brian@wojtalewiczlawfirm.com

**HAWKS QUINDEL EHLKE & PERRY, S.C.**


By   /s/Aaron Halstead
   Aaron N. Halstead, Esq.
   Attorney for Plaintiffs/Relators
   222 W. Washington Ave., Suite 705
   P.O. Box 2155
   Madison, WI 53701-2155
   (608)257-0040
   ahalstead@hqeplaw.com

**NEIL P. THOMPSON, RPH, ESQ.**


By   /s/Neil Thompson
       Neil P. Thompson
       Attorney for Plaintiff/Relator
       MN. LIC. 0291638
       2249 East 38th Street
       Minneapolis, MN 55407-3083
       (612)246-4788
       nptrxlaw@gmail.com


**LEVANDER & VANDER LINDEN, P.A.**


By   /s/James VanderLinden
       James G. Vander Linden
       Attorney for Plaintiffs/Relators
       MN. LIC. 112136
       670 Park Place East
       5775 Wayzata Boulevard
       St. Louis Park, MN 55416
       (612)339-6841
       jim@vanderlindenlaw.com


**ROBERT P. CHRISTENSEN, P.A.**


By   /s/Robert Christensen
       Robert P. Christensen
       Attorney for Plaintiffs/Relators
       MN. LIC 16597
       670 Park Place East
       5775 Wayzata Boulevard
       St. Louis Park, MN 55416
       (612)333-7733
       rpchristensen@visi.com